## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

JOSEPH ARTHUR SOUTHERLAND,
JR.,

                   Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                   Defendant.

1:16-cv-00150-NLH

**OPINION**

---

**APPEARANCES:**

FREDERICK MICHAEL FRIEDMAN
340 N. LANDSDOWNE AVE.
P.O. BOX 467
DREXEL HILL, PA 19026

KARL E. OSTERHOUT
OSTERHOUT DISABILITY LAW, LLC
521 CEDAR WAY, SUITE 200
OAKMONT, PA  15139
     On behalf of Plaintiff

ANDREW CHARLES LYNCH
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
PHILADELPHIA, PA 19123
     On behalf of Defendant

**HILLMAN**, District Judge

     This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security

Act.  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, March 18, 2013.  For the reasons stated below, this Court will affirm the ALJ's decision.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On July 26, 2013, Plaintiff, Joseph Arthur Southerland, Jr., applied for benefits alleging disability since March 18, 2013.  Plaintiff's impairments include HIV, history of major depressive disorder, anxiety disorder with panic attacks, obesity, dependent personality disorder, status post suicide attempt with lithium, and sequelae from lithium toxicity, including coma, status post tracheotomy, foot drop, and neuropathy affecting the feet.  Plaintiff previously worked as a senior benefits specialist.

After the state agency denied Plaintiff's application twice, Plaintiff requested an administrative hearing.  A hearing before an ALJ was held on January 14, 2015.  On May 29, 2015, the ALJ issued her decision, which determined that Plaintiff was not disabled.  On November 13, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the

final decision of the Commissioner.  Plaintiff brings this civil

action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial

review of the Commissioner's decision to deny a complainant's

application for Disability Insurance Benefits.  Ventura v.

Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court

must uphold the Commissioner's factual decisions where they are

supported by "substantial evidence."  42 U.S.C. §§ 405(g),

1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.

2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000);

Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

Substantial evidence means more than "a mere scintilla."

Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting

Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It

means "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  Id.  The inquiry is not

whether the reviewing court would have made the same

determination, but whether the Commissioner's conclusion was

reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

4

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review,

a district court is not "empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder."

Williams, 970 F.2d at 1182.  However, apart from the substantial

evidence inquiry, a reviewing court is entitled to satisfy

itself that the Commissioner arrived at his decision by

application of the proper legal standards.  Sykes, 228 F.3d at

262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

6

3.  If the severe impairment meets or equals a listed
    impairment in 20 C.F.R. Part 404, Subpart P, Appendix
    1 and has lasted or is expected to last for a
    continuous period of at least twelve months, the
    claimant will be found "disabled."

4.  If the claimant can still perform work he has done in
    the past ("past relevant work") despite the severe
    impairment, he will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's
    ability to perform work ("residual functional
    capacity"), age, education, and past work experience
    to determine whether or not he is capable of
    performing other work which exists in the national
    economy.  If he is incapable, he will be found
    "disabled."  If he is capable, he will be found "not
    disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

    This five-step process involves a shifting burden of proof.

See Wallace v. Secretary of Health & Human Servs., 722 F.2d

1150, 1153 (3d Cir. 1983).  In the first four steps of the

analysis, the burden is on the claimant to prove every element

of his claim by a preponderance of the evidence.  See id.  In

the final step, the Commissioner bears the burden of proving

that work is available for the Plaintiff: "Once a claimant has

proved that he is unable to perform his former job, the burden

shifts to the Commissioner to prove that there is some other

kind of substantial gainful employment he is able to perform."
Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.
Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

## C.   Analysis

At step one, the ALJ found that Plaintiff has not engaged
in substantial gainful activity since the alleged onset of
disability, March 18, 2013.  At step two, the ALJ found that
Plaintiff's impairments of HIV, history of major depressive
disorder, anxiety disorder with panic attacks, obesity,
dependent personality disorder, status post suicide attempt with
lithium, and sequelae from lithium toxicity, including coma,
status post tracheotomy, foot drop, and neuropathy affecting the
feet were severe.  At step three, the ALJ determined that
Plaintiff's severe impairments or his severe impairments in
combination with his other impairments did not equal the
severity of one of the listed impairments.  For step four, the
ALJ determined that Plaintiff could not perform his past work as
a senior benefits specialist, but at step five the ALJ found
that Plaintiff retained the residual functional capacity to work
at the sedentary level with certain restrictions in jobs such as
a referral clerk, host, information clerk, document preparer,
order clerk, and greeter.  Accordingly, the ALJ found that

8

Plaintiff was not disabled.

Plaintiff presents four areas where he claims the ALJ erred in her analysis:

> 1. The ALJ erred by finding "moderate" social functioning limitations at step 3, but then failed to include any social functioning limitations in the RFC assessment.

> 2. The ALJ erred by failing to make a finding regarding Plaintiff's use of a cane, particularly in her RFC analysis.

> 3. The ALJ erred by failing to properly analyze Plaintiff's treating physicians' opinions.

> 4. The ALJ erred in the assessment of Plaintiff's credibility, including failing to consider Plaintiff's work history.

The Court finds that the ALJ did not err in the ways Plaintiff argues, and holds that substantial evidence supports the ALJ's decision that Plaintiff retains the residual functional capacity to perform sedentary work.

Plaintiff's appeal of the ALJ's decision focuses on the ALJ's assessment of Plaintiff's RFC and her ultimate determination that Plaintiff's RFC enables him to perform sedentary work. In making that determination, the ALJ is required to do the following:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By

9

> objective medical evidence, we mean medical signs and
> laboratory findings . . . . By other evidence, we mean . .
> . statements or reports from you, your treating or
> nontreating source, and others about your medical history,
> diagnosis, prescribed treatment, daily activities, efforts
> to work, and any other evidence showing how your
> impairment(s) and any related symptoms affect your ability
> to work. . . .

20 C.F.R. § 404.1529.

In performing Plaintiff's RFC assessment, the ALJ primarily
contrasted the medical evidence with statements from Plaintiff,
his daily activities, and his efforts to work.  With regard to
the medical evidence, the ALJ observed:

1. Plaintiff's kidney failure was due to an overdose of
   lithium in April 2013, but once his lithium level was
   normalized he was discharged in May 2013 with normal kidney
   function.

2. On May 2, 2013, Plaintiff was admitted to the hospital for
   a suicide attempt, and was discharged six days later with
   normal mood, affect, and sensorium.  It was noted that
   Plaintiff had a history of benzodiazepines and inhalant
   use.

3. On May 27, 2013, Plaintiff was admitted to the hospital
   after being found with medication and a suicide note.  He
   was diagnosed with major depressive disorder and
   generalized anxiety disorder.  By discharge on July 16,

2013, Plaintiff had an almost normal mental health status exam with improved insight and judgment and a Beck suicide score of zero.

4. Plaintiff's Global Assessment of Functioning (GAF) score was 25-35 at time of his suicide attempts, but 53 and 57 after discharge from the hospital.[1]

5. Plaintiff's treating source at Garden State Infectious

---

[1] The GAF Scale ranges from zero to one-hundred. An individual's "GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range.":

A GAF of 51-60 is "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g.. few friends, conflicts with peers or co-workers)."

A GAF of 31-40 is "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."

A GAF of 21-30 is "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM-IV-TR") p. 34.

Disease Associates on July 23, 2013 completed a form and checked the box for marked restrictions in activities of daily living and marked difficulties in concentration, persistence or pace.

6. Plaintiff's psychologist, Dr. Anne Carter, who discharged him in September 2013, noted that Plaintiff was not currently suicidal, and could perform activities of daily living independently.  Dr. Carter noted that Plaintiff deals with depression and anxiety, has periods of withdrawal, has normal cognition but he can overthink things, has moderate difficulties in social functioning, he is not making friends, but is appropriate with those he knows, he accepts criticism well, is cooperative, verbalizes needs and has normal speech, mild difficulties in concentration, persistence and pace, with trouble concentrating on complex tasks.

7. On September 5, 2013, Plaintiff attended physical therapy and was feeling stronger but had problems with balance.  He asked for an evaluation so that he could drive.

8. The progress notes of psychologist Dr. Carter, dated December 2, 2013, indicated no limitations in memory, sustained concentration, social interaction, adaption, but

did note physical limitations and continued depression.

9. Plaintiff's HIV status is stable as shown through a normal physical exam on September 23, 2014.

10. Plaintiff's treating physician, Dr. Levin, completed a form on March 13, 2014 that states that Plaintiff can only sit for 3 hours and stand/walk for 1 hour each day.  Dr. Levin completed another form on April 7, 2014 that states that Plaintiff can perform a limited range of sedentary work, lifting/carrying 5-10 pounds occasionally and 5 pounds frequently, standing/walking for less than 2 hours and sitting for 6 hours in an 8-hour work day.

11. Plaintiff's treating physician, Dr. Jermyn, completed a form on April 14, 2014 that states that Plaintiff's work restrictions included "prolonged walking" and when asked, "Is client medically cleared to work or school?" the doctor stated "No."

12. Foot drop improving with physical therapy.

(R. at 22, 24-27.)

The ALJ recounted the following regarding Plaintiff's daily living activities and his own statements:

1. Plaintiff spends his days eating and cleaning his house, including vacuuming and laundry, taking naps throughout the

day.  Plaintiff has no trouble with personal care, he can
prepare his own meals, he does not need reminders to take
his medication.  Plaintiff's partner stated that Plaintiff
goes to the diner, shopping and church.  Plaintiff judges
cheering shows.

2. Plaintiff states that he only goes outside rarely and can
walk for only 10 minutes due to leg pain, but he is able to
go food shopping once a week for 1 hour at a time.

3. Plaintiff states that he has trouble with concentration,
does not handle stress well, he has depression and anxiety,
HIV causes him nightsweats and trouble sleeping, along with
abdominal cramping and nausea in the morning, but the
medication Bentyl helps.

4. Under oath, Plaintiff denied a history of substance abuse,
but there is evidence in the record the he has a history of
"huffing" and used "Maximum Impact," an inhaler.  When he
was admitted to the hospital for a suicide attempt on May
2, 2013, he was using the inhaler, and urine and drug tests
were positive for benzodiazepines.  When he was admitted
again on July 19, 2013, Plaintiff admitted he had an
addiction to inhalants and sex.

5. When Plaintiff was questioned at the hearing about huffing

14

and the use of the inhaler, Plaintiff stated that his

partner told the hospitals that information, but that he

had used them "many years ago."

(R. at 24-28.)

Based on the foregoing, the ALJ determined that Plaintiff

retained the residual functional capacity to perform sedentary

work, except that he requires low stress work, must avoid

concentrated exposure to dust, fumes, pulmonary irritants and

temperature extremes, and he would be off-task five percent of

the workday in addition to normal breaks.[2]  Noting that Plaintiff

was considered, at 46 years old, a "younger individual" on the

alleged disability onset date, that Plaintiff has a B.A. in

music and a B.S. in business administration, and that Plaintiff

previously worked as a senior benefits specialist, the ALJ posed

the question to a vocational expert whether jobs exist in the

national economy that Plaintiff was capable of when considering

Plaintiff's age, education, work experience, and RFC.  The VE

---

[2] See 20 C.F.R. §404.1567(a) ("Sedentary work. Sedentary work
involves lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files,
ledgers, and small tools. Although a sedentary job is defined as
one which involves sitting, a certain amount of walking and
standing is often necessary in carrying out job duties. Jobs are
sedentary if walking and standing are required occasionally and
other sedentary criteria are met.")

determined that such a person could perform sedentary, semi-skilled jobs, such as a referral clerk, information clerk, and host.  The VE also stated that such a person could perform sedentary, unskilled jobs, such as a document preparer, order clerk, and greeter.  The ALJ therefore concluded that Plaintiff was not disabled.

As noted above, Plaintiff challenges the ALJ's decision in several ways.  Plaintiff contends that the ALJ should have included Plaintiff's social functioning limitations, and his need to use a cane, in the RFC and resulting hypothetical to the VE.  Plaintiff also argues that the ALJ improperly discounted the opinions of his treating physicians, Drs. Levin and Jermyn, and she imposed her lay interpretation of the medical evidence. Plaintiff finally takes issue with the ALJ's assessment of Plaintiff's credibility, particularly her failure to recognize his excellent work history of working for 30 years straight at a high level position.

The Court does not find that the ALJ erred as alleged. With regard to the ALJ's assessment of the medical evidence, the ALJ properly articulated the weight she afforded each record and why she reached that conclusion.  See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citations omitted) ("When a conflict in

the evidence exists, the ALJ may choose whom to credit but
cannot reject evidence for no reason or for the wrong reason.
The ALJ must consider all the evidence and give some reason for
discounting the evidence she rejects."); see also Diaz v.
Commissioner, 577 F.3d 500, 505-06 (3d Cir. 2009) ("In
evaluating medical reports, the ALJ is free to choose the
medical opinion of one doctor over that of another.").

    The ALJ properly compared the medical evidence, and based
her assessment on the substance of those records which were
consistent, while discounting notes and opinions that lacked
support or conflicted with Plaintiff's own statements. (See R.
at 26, giving Dr. Levin's two reports some weight in that they
support that Plaintiff was capable of performing sedentary work,
but discounting the internal inconsistencies; R. at 27, giving
Dr. Jermyn's opinion that Plaintiff cannot perform prolonged
walking significant weight, but discounting the statement that
Plaintiff was not cleared for work because the doctor provided
no explanation and that conclusion is not supported by the
record; id., giving some weight to the GSDA report because it
was consistent relative to time of Plaintiff's discharge from
the hospital, but discounting it for questions about its
acceptability as a medical source, and because it did not show

17

the proper 12-month duration of level of limitation; id.,
rejecting Dr. Carter's notes that Plaintiff had no limitation in
concentration, persistence, pace, social interaction, and
adaption, because the evidence clearly showed that Plaintiff has
mild to moderate limitations in those areas).[3]

The ALJ also properly considered Plaintiff's GAF.  The ALJ
noted that Plaintiff's GAF was low at the times he was admitted
to the hospital in May 2013, but that after treatment and since
that time, Plaintiff's GAF is in accord with his daily living
activities.  (R. at 27.)  See Gulin v. Commissioner, 2014 WL
1466488, 4 n.2 (D.N.J. 2014) (citing American Psychiatric
Association, Diagnostic and Statistical Manual of Mental
Disorders 34 (4th ed. text rev. 2000) ("DSM-IV-TR")) ("In most
instances, ratings on the GAF Scale should be for the current
period (i.e., the level of functioning at the time of the
evaluation) because ratings of current functioning will
generally reflect the need for treatment or care."); see also

---

[3] See, e.g., Zonak v. Commissioner of Social Sec., 290 F. App'x
493, 497 (3d Cir. 2008) (affirming the ALJ's rejection of the
plaintiff's treating physician's opinion because it was provided
on a check-box form and no reasons were given in support of the
doctor's conclusion) (citing Mason v. Shalala, 994 F.2d 1058,
1065 (3d Cir. 1993) (declaring that "[f]orm reports in which a
physician's obligation is only to check a box or fill in a blank
are weak evidence at best")).

Forster v. Colvin, --- F. Supp. 3d ---, 2015 WL 1608741, at *9
(M.D. Pa. 2015) (finding that the ALJ properly addressed the
plaintiff's GAF scores in totality with the remaining medical
evidence of record, given that the ALJ accounted for the GAF
scores in addition to evidence from medical source opinions,
testimony, Plaintiff's activities of daily living, and the
record as a whole).  The record shows that Plaintiff's GAF after
discharge from the hospital indicated Plaintiff suffered from
moderate symptoms (e.g., flat affect and circumstantial speech,
occasional panic attacks), or moderate difficulty in social,
occupational, or school functioning (e.g., few friends,
conflicts with peers or co-workers), which is the 51-60 range.
The ALJ properly recognized this finding by Plaintiff's
psychologist, and did not impose that GAF score herself.

Further, despite Plaintiff's argument to the contrary, the
ALJ properly considered Plaintiff's limitations in social
functioning in her RFC analysis, in addition to her observation
of this limitation at step three.[4]  The ALJ rejected Dr. Carter's

---

[4] The ALJ is required to assess all of Plaintiff's
impairments – even ones that are not "severe" - in combination
when making the RFC determination.  See 20 C.F.R. §
404.1545(a)(2) ("We will consider all of your medically
determinable impairments of which we are aware, including your
medically determinable impairments that are not 'severe,' as
explained in §§ 404.1520(c), 404.1521, and 404.1523, when we

notation that Plaintiff did not suffer from a limitation in this
area, and observed that his limitations in social functioning
was in the moderate range when discussing Plaintiff's GAF.  The
ALJ also discussed Plaintiff's social functioning limitations
when assessing Plaintiff's statements about his daily living
activities.

At this point, the ALJ recognized Plaintiff's impairments
and his inability to perform his previous work, but she also
found Plaintiff's lack of credibility to detract from his claims
that he is unable to work at all.  The ALJ noted that Plaintiff
was not truthful at the hearing when he testified under oath
that he had not abused substances, such as an inhaler, for many
years, since his medical records from May and July 2013 recorded
his admissions of using the inhaler, and drug tests confirmed
his use of those substances.  (R. at 26.)  The ALJ noted that
even though Plaintiff testified that he rarely left the house,
Plaintiff continued to judge cheering competitions, went out to
dinner and shopping, and attended church.  (R. at 25.)

The ALJ did not err, therefore, when she did not comment on
Plaintiff's use of a cane, because it did not affect the finding

---

assess your residual functional capacity.").

20

that Plaintiff was capable of a sedentary job, when considered
in the context of Plaintiff's daily living activities, his
doctor's assessment of his standing and walking abilities, and
that his need to use a cane was based on his own testimony
rather than the records of a medical treatment provider.  See,
e.g., Smelly v. Commissioner of Social Sec., 2013 WL 3223000, at
*7 (D.N.J. 2013) (citing S.S.R. 96–9p) (stating that a cane does
not automatically erode a claimant's sedentary occupational base
significantly); Dye v. Commissioner of Social Sec., 2009 WL
3242078, at *6 (D.N.J. 2009) ("In making the step five
determination, the ALJ considered that Plaintiff would be
capable of only sedentary jobs, thus reflecting a view of
Plaintiff's difficulties consistent with the prescription of a
cane in April of 2004.").

     The ALJ also did not err when she did not specifically
mention Plaintiff's "exemplary" work history, as it did not
impact Plaintiff's current credibility, including his testimony
at the hearing.  See Wanko v. Barnhart, 91 F. App'x 771, 774 (3d
Cir. 2004) (noting that "[w]e afford the credibility
determinations of the ALJ great weight because he had the
opportunity to observe the demeanor and hear the testimony given
by [the claimant]," and finding that because the ALJ gave

                              21

legally sufficient reasons in support of his finding that the
plaintiff's testimony was not entirely credible, the ALJ's
decision to discount the plaintiff's testimony was supported by
substantial evidence); Zirnsak v. Colvin, 777 F.3d 607, 612–13
(3d Cir. 2014) ("[T]he ALJ must necessarily make certain
credibility determinations, and this Court defers to the ALJ's
assessment of credibility"; "[h]owever, the ALJ must
specifically identify and explain what evidence he found not
credible and why he found it not credible."); Marquez v. Astrue,
2011 WL 835604, at *9 (D.N.J. 2011) (citing Wier v. Heckler, 734
F.2d 955, 962 (3d Cir. 1984) (declining to substitute its own
determination of credibility for that of the ALJ, given that the
ALJ had the opportunity to observe the plaintiff first-hand).

Finally, the ALJ did not err when she did not specifically
include any social limitations in her hypothetical to the VE.
That limitation was recognized in relation to the finding that
Plaintiff was no longer capable of being a senior benefits
specialist.  It was also implicit in the ALJ's hypothetical when
she informed the VE of Plaintiff's prior job, his education, and
the limitation to sedentary work.  Moreover, Plaintiff's
attorney questioned the VE at the hearing, and specifically
discussed one of the possible jobs Plaintiff's RFC allowed him

22

to perform – the host/greeter position – and counsel did not ask the VE whether Plaintiff's social impairments would preclude him from that type of job or similar jobs that require interaction with others, and instead only focused on whether such a job could be performed while seated.  (R. at 85-86.)

An ALJ is not required "to submit to the vocational expert every impairment alleged by a claimant." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (citations omitted).  Instead, "hypotheticals posed must accurately portray the claimant's impairments and [] the expert must be given an opportunity to evaluate those impairments as contained in the record." Id. (internal quotations and citations omitted).  Here, the ALJ's hypothetical to the VE accurately portrayed Plaintiff's impairments as she found them to be based on the medical evidence, Plaintiff's daily living activities, including that Plaintiff judged cheering competitions and attended church, and Plaintiff's testimony.  Cf. Myers v. Commissioner of Social Sec., 340 F. App'x 819, 821 (3d Cir. 2009) (finding that the following hypothetical "encompassed all of Myers's credibly established limitations, including, and despite Myers's assertions to the contrary, her deficiencies in concentration": "retained the residual functional capacity to perform medium and

light work involving no greater than simple, repetitive tasks[ ] in an environment free of excessive pulmonary irritants[ ] not involving supervision by a particularly authoritative or harsh supervisor"); Chanbunmy v. Astrue, 317 F. App'x 195, 196 (3d Cir. 2009) (finding that the hypothetical the ALJ posed to the vocational expert accurately portrayed the claimant's impairments because the ALJ adequately explained her treatment of the medical opinion evidence, the claimant's Global Assessment of Functioning scores, and her determination of the claimant's residual functional capacity").

**III. Conclusion**

For the reasons expressed above, the ALJ's determination that Plaintiff is not totally disabled is supported by substantial evidence.  The decision of the ALJ is therefore affirmed.

An accompanying Order will be issued.


Date:  March 31, 2017              s/NLH
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.